UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
RLP VENTURES, LLC,

               Plaintiff,

      - against -                  **MEMORANDUM AND ORDER**

MOSAIC LEARNING, INC.,              23 Civ. 09378 (NRB)

               Defendant.
---------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


Plaintiff RLP Ventures, LLC ("plaintiff") brings this action under the Lanham Act and New York common law, alleging claims of trademark infringement and unfair competition against defendant Mosaic Learning, Inc. ("defendant").  Plaintiff contends that defendant, through defendant's use of its "MOSAIC LEARNING" trademark, has infringed upon plaintiff's own trademark, "MOSAEC." Defendant moves to dismiss each of plaintiff's claims and concurrently moves for sanctions against plaintiff.  For the reasons set forth below, the Court concludes that plaintiff's claims fail as a matter of law, grants defendant's motion to dismiss in full, and denies defendant's motion for sanctions.

## BACKGROUND

**a. The Parties and Their Marks**

Plaintiff is a "limited liability company existing under the laws of the state of New York" and holds the trademark for the mark "MOSAEC." ECF No. 52 ("SAC") ¶¶ 2, 18, 19. Allegedly, since the 1990s, "Plaintiff has continuously used the MOSAEC mark" and "has consistently and continuously advertised and rendered its services in new and old media and in physical and virtual forms, using plaintiff's domain name mosaec.com to advertise Plaintiff's services under Plaintiff's Mark." Id. ¶ 10.

Plaintiff alleges that, while operating under its mark, it "enables users to create a web presence across a diverse range of fields, including business, current events, education, training, entertainment, technology, culture, entrepreneurship, administration, management, marketing, recruiting, career advancement, and professional development." Id. ¶ 11. "Plaintiff's operations . . . also include providing individuals and businesses with educational training and customized educational content." Id. "In addition . . . Plaintiff offers software as a service, allowing its users to establish a web presence from which they can create a centralized way to share information, digital content, goods and services with their followers." Id. ¶ 12. Plaintiff further alleges that since May

-2-

2014, it "has had an account on sam.gov, the US federal government's system for award management and the Plaintiff has a CAGE number, or Commercial and Government Entity code, that is assigned by the Department of Defense's Defense Logistics Agency," which "enables Plaintiff to participate in federal government procurement opportunities, including with the US Department of Defense." Id. ¶ 13. "In addition, Plaintiff, as a social enterprise, receives revenues in the form of monetary donations as well as sales of merchandise and advertising to support its philanthropic work." Id. ¶ 15. Plaintiff also has a social media presence across several platforms including but not limited to YouTube, X (formerly "Twitter"), and LinkedIn. Id. ¶ 16.

As relevant to this case, plaintiff purportedly is the "owner of numerous registrations and applications on the Principal Register of the United States Patent and Trademark Office" for the MOSAEC mark, involving several "notable services" in trademark Classes 41 and 42. Id. ¶ 18. Plaintiff's services in Class 41 include: "[i] providing information by means of a global computer network in the fields of celebrities, entertainment, and popular culture . . . [ii] providing on-line review of entertainment, film, fine arts, museums, literature, culture, music, sports, fashion, theater, and dance; [iii] Providing a website featuring entertainment information in the field(s) of entertainment, film,

fine arts, museums, literature, culture, music, sports, fashion, theater, dance, and news; [iv] Providing information, news and commentary in the field of entertainment; [v] Providing information, news and commentary in the field of recreation and leisure activities; [and vi] Provision of information relating to children's entertainment[.]"  Id.  In Class 42, plaintiff has a registration for "[p]roviding temporary use of a non-downloadable web application for posting, searching, accessing, sharing, and tracking reviews, ratings, referrals, recommendations, and other information as well as advertising, uploading photos, adding videos, finding, locating, and interacting with other users, related to entertainment, film, fine arts, museums, literature, culture, music, sports, fashion, theater, dance, restaurants, recreation and leisure activities[.]"  Id.

Plaintiff also has registrations for various other goods and services including, "Printed instructional, educational, and teaching materials in the field of foreign languages and cross-cultural communication; Fiction books . . . Non-fiction books[,]" "Hats; Pants; Shirts[,]" "Fundraising services[,]" "On-line social networking services[,]" and "Providing information in the field of temporary lodging and accommodations for travelers[.]"  Id. ¶ 19. In other words, plaintiff appears to be a jack of all trades,

offering everything from business advisory services to copies of fiction books.

Defendant describes itself in its own motion as "a well-established technology company that develops Saas-based educational tools: eLearning platforms, simulations, and immersive virtual training software.  Its products are used by more than five million individuals and trusted by major institutional clients such as the U.S. Army, the U.S. Department of Transportation, and prominent labor unions."  ECF No. 59 ("MTD") at 2 (citing https://mosaiclearning.com/).[1]  According to plaintiff's complaint, defendant uses its own mark, "MOSIAC LEARNING" ("defendant's Mark") "in rendering services in commerce, comprising:  'business advisory services in the nature of development, education and training programs and methodologies' (Class 35); 'educational services, namely, developing customized curriculum and course material in connection therewith, for others; consulting services in the development and implementation of customized curriculum and course material in connection therewith, for others' (Class 41); and 'development of software

---

[1]    We note that plaintiff's complaint incorporates, references, and relies on Mosaic Learning's website, as well as its own website. See, e.g., SAC ¶¶ 10, 21.  As such, the Court may consider the parties' websites while considering this motion.  Atl. Recording Corp. v. Project Playlist, Inc., 603 F. Supp. 2d 690, 694, n.3 (S.D.N.Y. 2009) ("Because the Website is incorporated by reference into the Complaint, the Court may consider it on a motion to dismiss.") (citing Gorran v. Atkins Nutritionals, Inc., 464 F. Supp. 2d 315, 319, n.1 (S.D.N.Y. 2006)).

for others, namely, non-downloadable software used to manage their proprietary digital content; downloadable software provided as a service, namely, nondownloadable software used to manage proprietary digital content' (Class 42)." Id. ¶ 22.

### a. The TTAB Proceedings

In considering these motions, the Court does not write in a vacuum. In August 2018, defendant applied to register its mark, MOSAIC LEARNING, and plaintiff opposed the application. MTD at 4. After fulsome proceedings, the Trademark Trial and Appeal Board ("TTAB") issued a 59-page decision in August 2023. ECF No. 59-1 ("TTAB Decision").

Specifically, defendant sought to register the mark "MOSAIC LEARNING" for the following services: business advisory services in the field of development, education and training programs and methodologies, in Class 35; educational services, namely, developing customized curriculum and course material in connection therewith, for others; consulting services in the development and implementation of customized curriculum and course material in connection therewith, for others, in Class 41; and development of software for others, namely, non-downloadable software used to manage their proprietary digital content; downloadable software provided as a service, namely, non-downloadable software used to

-6-

manage proprietary digital content, in Class 42.  TTAB Decision at 2.

Plaintiff opposed the registration, asserting, among other things, a claim for likelihood of confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), based on its ownership of the mark "MOSAEC."  Id.

As relevant to this case, the TTAB considered plaintiff's opposition under Section 2(d) of the Trademark Act, which "prohibits registration of a mark that 'so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive.'"  Id. at 20 (emphasis added).  The TTAB thus necessarily considered the likelihood of confusion between the parties' marks "based on an analysis of all probative facts in evidence that are relevant to the factors set forth in" In re E.I. du Pont de Nemours & Co. ("du Pont"), 476 F.2d 1357 (CCPA 1973). TTAB Decision at 34.

In keeping with du Pont, the TTAB evaluated the following factors: (1) the similarity or dissimilarity of the marks, TTAB Decision at 35-37; (2) the similarity or dissimilarity and nature of the services, id. at 37-44; (3) the trade channels and classes

of consumers, id. at 44-47; (4) purchaser sophistication, id. at 47-49; (5) the number and nature of similar marks in use on similar goods, id. at 49-53; (6) actual confusion, including the nature and extent of any actual confusion and the length of time during and conditions under which there has been concurrent use without evidence of actual confusion, id. at 53-54; (7) the variety of goods or services on which a mark is or is not used, id. at 54-55; (8) the extent to which [defendant] has a right to exclude others from use of its mark on its services, id. at 55-56; and (9) the extent of potential confusion, id. at 56-58.  Weighing all the factors together, the TTAB determined that "confusion is unlikely as to [defendant's] Class 35 and 41 services," but the "factors together show that confusion is likely as to [defendant's] Class 42 services."  Id. at 59.  Thus, the likelihood of confusion claim was "dismissed in part (as to [defendant's] Class 35 and 41 services) and sustained in part (as to [defendant's] Class 42 services)."  Id.

### b. Procedural History

Plaintiff filed this lawsuit on October 24, 2023, asserting four claims: (1) trademark infringement under 15 U.S.C. § 1114; (2) unfair competition under 15 U.S.C. § 1125(a); common-law trademark infringement; and (4) common-law unfair competition. ECF No. 1.  Plaintiff amended the original complaint on October 2,

2025, ECF No. 31, and sought leave to amend the complaint again in December 2024, ECF No. 41.  The Court granted leave to amend the complaint "for the final time" on December 23, 2024.  ECF No. 43.  Plaintiff subsequently filed its Second Amended Complaint on March 28, 2025, asserting the same four claims.  ECF No. 52.

On June 13, 2025, defendant filed the instant motion to dismiss and concurrently filed a motion for sanctions.  MTD; ECF No. 61 (the "Sanctions Mot.").[2]  Plaintiff submitted oppositions to both motions on June 27, 2025.  ECF Nos. 64 (the "MTD Opp."); 61 (the "Sanctions Opp.").  The motions were fully briefed on July 9, 2025, when defendant filed memoranda in support of its motions. ECF Nos. 67 (the "MTD Reply"); 66 (the "Sanctions Response").  The Court will consider each motion in turn, beginning with defendant's motion to dismiss.

---

[2]    Defendant brings its motion for sanctions in part under Rule 11 of the Federal Rules of Civil Procedure, which includes a "safe harbor" that gives the respondent to a prospective Rule 11 motion 21 days to amend the offending submission before the movant is allowed to file the motion with the Court.  See Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets").  Defendant notes in its motion for sanctions that "[i]n accordance with Rule 11(c)(2), Mosaic Learning served this motion for sanctions [on plaintiff] . . . more than twenty-one days before filing it with the Court."  Sanctions Mot. at 4.  Thus, defendant's motion is procedurally proper under Rule 11.

## II.  Motion to Dismiss

### a. Legal Standard

To withstand a motion to dismiss under Rule 12(b)(6), a non-movant's pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the [pleaded] fact[s] . . . allow[] the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged."  Id.  A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor.  Acticon AG v. China N.E. Petrol. Holdings Ltd., 692 F.3d 34, 37 (2d Cir. 2012). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Brown v. Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

### b. Discussion

Defendant raises four arguments in support of its motion to dismiss.  First, defendant argues that each of the claims in plaintiff's complaint fails to state a plausible cause of action under Rule 12(b)(6).  MTD at 6-11.  Second, defendant argues that

the claims separately fail because plaintiff is collaterally estopped from relitigating the issue of likelihood of confusion on the basis of the TTAB Decision.  Id. at 11-14.  Third, defendant argues that plaintiff is not entitled to any of the relief it seeks.  Id. at 14-15.  Finally, defendant argues that dismissal with prejudice is warranted because plaintiff failed to cure the deficiencies in its complaint despite the Court's warning that this was plaintiff's "final" opportunity to amend.  Id. at 15-16. The Court will address each argument in turn, beginning with the question of collateral estoppel.

### i. Collateral Estoppel

"[I]ssue preclusion," also known as collateral estoppel, bars "successive litigation of an issue of fact or law," New Hampshire v. Maine, 532 U.S. 742, 748-49 (2001), when (1) "the issues in both proceedings are identical," (2) "the issue in the prior proceeding was actually litigated and actually decided," (3) "there was a full and fair opportunity for litigation in the prior proceeding," and (4) "the issues previously litigated were necessary to support a valid and final judgment on the merits." Ali v. Mukasey, 529 F.3d 478, 489 (2d Cir. 2008) (internal quotation marks omitted).  The Supreme Court has concluded that "[s]o long as the other ordinary elements of issue preclusion are met, when the usages adjudicated by the TTAB are materially the

-11-

same as those before the district court, issue preclusion should apply." B&B Hardware Inc. v. Hargis Indus., Inc., 135 S. Ct. 1293, 1310 (2015).

Before analyzing the applicability of collateral estoppel on the facts of this case, it is necessary to clarify two points: first, defendant does not argue that collateral estoppel should apply to every issue in this litigation. Specifically, defendant acknowledges that the TTAB found that there was no likelihood of confusion only as to the marks in Classes 35 and 41. As to the marks in Class 42, the TTAB found that there was a likelihood of confusion. TTAB Decision at 59. As such, defendant argues in a footnote that "[t]he TTAB's finding of likelihood of confusion for the Class 42 services was based solely on the registration application and did not consider actual marketplace usage—thus, it has no preclusive effect." MTD at 11, n.9.

Second, plaintiff does not challenge every element of collateral estoppel. Instead, plaintiff only challenges application of collateral estoppel on three grounds: (1) "the TTAB did not consider the **actual** usage of the parties' marks," MTD Opp. at 10; (2) "RLP Ventures did not have a full and fair opportunity to litigate the issue before the TTAB," id. at 10-11; and (3) "[a]pplying collateral estoppel would also be inequitable," id. at

11.  We turn first to the identity of the issues in this litigation and the TTAB proceeding.

### A. Identity of the Issues

In a trademark infringement action, the district court determines the likelihood of confusion between the parties' marks by "analyz[ing] the defendant's 'use in commerce' of its mark and compar[ing] that use to that of the plaintiff and its mark."  3 Anne Gilson LaLonde, Gilson on Trademarks § 13.20[5][c][iii] (Matthew Bender ed.); see also id. ("Federal courts are focused on what is happening in the marketplace rather than in an application or registration."); Cesari S.r.L v. Peju Province Winery L.P., 2017 WL 6509004, at *3 (S.D.N.Y. Dec. 11, 2017) (Buchwald, J.).

By contrast, in a TTAB opposition proceeding "a party opposing an application to register a mark . . . often relies only on its federal registration, not on any common-law rights in usage not encompassed by its registration."  B&B Hardware, 135 S. Ct. at 1307 (internal quotation marks omitted).  The TTAB "typically analyzes the marks, goods, and channels of trade only as set forth in the application and in the opposer's registration, regardless of whether the actual usage of the marks by either party differs."  Id.  Thus, the TTAB's "determination that a likelihood of confusion does or does not exist will not resolve the confusion issue with

respect to non-disclosed usages." Id. at 1308 (internal quotation marks omitted).

Consequently, "[i]f a mark owner uses its mark in ways that are materially the same as the usages included in its registration application, then the TTAB is deciding the same likelihood-of-confusion issue as a district court in infringement litigation." Id. However, "if a mark owner uses its mark in ways that are materially unlike the usages in its application, then the TTAB is not deciding the same issue. Thus, if the TTAB does not consider the marketplace usage of the parties' marks, the TTAB's decision should have no later preclusive effect in a suit where actual usage in the marketplace is the paramount issue." Id. (internal quotation marks omitted).

For purposes of these motions, therefore, the key considerations regarding the preclusive effect of the TTAB Decision are whether (1) the TTAB considered the marketplace usage of the parties' marks, and (2) if so, whether the parties use their marks in a way that is materially the same as the usages included in their registration applications.

### 1. Whether the TTAB Considered Marketplace Usage

The parties disagree as to whether the TTAB considered marketplace usage in the opposition proceedings before it. Compare MTD at 11 ("After a thorough analysis of the parties' respective

-14-

registrations and actual usage under Classes 35 and 41, the TTAB concluded there was no likelihood of confusion"); MTD Opp. at 10 ("the TTAB did not consider the **actual** marketplace usage of the parties['] marks").  However, the parties agree that the TTAB did not consider actual marketplace usage of the marks in Class 42. Compare MTD at 11 n.9 ("The TTAB's finding of likelihood of confusion for the Class 42 services . . . did not consider actual marketplace usage"); MTD Opp. at 10 (the TTAB did not consider the **actual** marketplace usage of the parties['] marks").  Thus, there is no argument that the TTAB considered actual marketplace usage as to the marks in Class 42, and collateral estoppel cannot apply to the TTAB's findings as to the marks in Class 42.

As to Classes 35 and 41, we find plaintiff's contention that the "TTAB did not consider the **actual** marketplace usage of the parties marks," MTD Opp. at 10, to be flatly contradicted by the TTAB's written opinion.  In its 59-page opinion, the TTAB spent considerable time considering the marketplace usage of the marks at issue.  Specifically, the TTAB considered, among other things, (i) the similarity or dissimilarity and nature of the parties' services, TTAB Decision at 37–44, (ii) the trade channels and classes of consumers that the parties' marks were intended to serve, id. at 44–47, and (iii) "the conditions under which and [] buyers to whom sales are made," id. at 47–49.  Thus, we conclude

that the TTAB opinion did consider the marketplace usage of the parties' respective marks.

### 2. Whether the Usages Are Materially the Same

The question then becomes whether the parties use their marks in Classes 35 and 41 in a way that is materially different than the usages considered by the TTAB.  Plaintiff does not argue that there are any material changes in the actual marketplace usage of either parties' respective marks such that collateral estoppel as to Classes 35 and 41 would be improper here.  See MTD Opp. at 10-11.  Indeed, as defendant points out, MTD at 13, plaintiff alleges trademark infringement for the very same usages that the TTAB already considered in Classes 35 and 41.  Here, plaintiff alleges that:

> the services offered by Defendant in connection with [its mark] . . . are similar and arguably identical to some of the services offered by Plaintiff in connection with which Plaintiff's Mark is used, including: (a) Advisory services in the field of development, education and training[.]  (b) Customized curriculum and course material based on consultations with clients to create and implement tailored learning solutions in-person and virtually.   (c) Personalized education and career guidance based on individual assessments, including with clients with Individualized Education Programs.   (d) Curriculum design, educational content curation, and educational strategy development. (e) software as a service platform for digital content. [And] (f) business advisory services.

SAC ¶ 31.   The TTAB considered exactly these usages.  See TTAB Decision at 41 (considering defendant's "Class 35 services of

'business advisory services in the field of development, education and training[.]'"), 30 (noting that plaintiff's founder stated in a declaration that she "consulted with [plaintiff's] clients to develop and implement customized learning solutions"), 28 (finding that a "brochure promoting Opposer's learning curriculum development and career development and guidance services . . . constitutes only advertising"), 39-40 (considering defendant's Class 41 services, which offer "'educational' and 'consulting' services, both aimed at developing 'customized curriculum and course material in connection therewith" and finding "no relation between" those services and plaintiff's services), 40 (considering defendant's "'development of software for others . . . and 'downloadable software provided as a service'"), 41 (finding that none of plaintiff's services "is related to [defendant's] Class 35 services of 'business advisory services[.]"). It is clear that the usages alleged in plaintiff's complaint in this action are materially the same as those considered by the TTAB.

It is true, as the TTAB itself pointed out, that the TTAB "focus[es] on the application and registrations rather than on real-world conditions." TTAB Decision at 38. However, where, as here, the "mark owner uses its mark in ways that are materially the same as the usages included in its registration application, then the TTAB is deciding the same likelihood-of-confusion issue

-17-

as a district court in infringement litigation." B&B Hardware, 135 S. Ct. at 1308. Thus, the first element of collateral estoppel – the identity of issues – is satisfied as to defendant's Class 35 and 41 marks.

### B. Opportunity to Fully and Fairly Litigate

We turn next to plaintiff's contention that it did not have a full and fair opportunity to litigate the likelihood of confusion issue in front of the TTAB. Here again we find plaintiff's contention to be contradicted by the record in the TTAB proceeding. As plaintiff acknowledges in its SAC, "[i]n the TTAB proceeding, Plaintiff filed original and amended pleadings and Defendant filed an original and amended answers and counterclaims." SAC ¶ 7. Further, review of the TTAB opinion itself reflects that plaintiff submitted significant evidence, including numerous declarations, documents, and other exhibits. TTAB Decision at 4–5. Plaintiff also contends that the TTAB proceedings "do not offer the same procedural safeguards and fact-finding mechanisms as those available in federal court." MTD Opp. at 10. If that contention alone were sufficient to preclude estoppel on the basis of a TTAB proceeding, a finding of collateral estoppel could never result, an argument in direct opposition to the Supreme Court's determinations in B&B Hardware. Here, plaintiff evidently had ample and sufficient opportunity to fully and fairly litigate the

-18-

likelihood of confusion before the TTAB, and that element of collateral estoppel is satisfied.

### C. Equitable Considerations

Plaintiff's final argument against collateral estoppel is that "[a]pplying collateral estoppel would also be inequitable, as the TTAB decision was rendered without the full range of discovery and procedural rights available in this court." MTD. Opp. at 11. Plaintiff cites to no authority for its proposition that application of collateral estoppel here would be inequitable beyond one case that notes that "because the collateral estoppel doctrine finds its origin in equity, New Jersey law requires that it must be applied with an eye towards fairness for all parties." Sanders v. Sanders, 2021 U.S. Dist. LEXIS 183758, at *14, *27–31 (S.D.N.Y. Sep. 24, 2021). Leaving aside the fact that the court in Sanders applied New Jersey law, notions of equity and fairness do not counsel against the application of collateral estoppel in this case.

At base, plaintiff's argument is little more than a repackaging of its argument that it did not have an opportunity to fully and fairly litigate this issue in front of the TTAB, which we have just rejected. In any event, plaintiff evidently was able to obtain discovery in the TTAB proceeding, as it relies on defendant's discovery responses in that proceeding in its

-19-

arguments here.  MTD Opp. at 5 n.1.  The Court sees no reason why applying collateral estoppel here would be unfair or inequitable.

### D. Remaining Elements of Collateral Estoppel

While not argued by plaintiff, the Court nonetheless finds, for the avoidance of doubt, that the issue of likelihood of confusion was "actually litigated and actually decided" in the TTAB Decision, and the issue was "necessary to support a valid and final judgment on the merits."  Mukasey, 529 F.3d at 489.  Thus, the TTAB ruling on likelihood of confusion operates to preclude plaintiff from re-litigating the likelihood of confusion as to defendant's marks in Classes 35 and 41.

### ii. Failure to State a Claim
### A. Count II is Identical to Count I

Having determined that collateral estoppel acts as a bar to relitigating the issue of likelihood of confusion as to the Class 35 and 41 marks, we turn now to the claims in this action.  As a preliminary matter, the Court finds that plaintiff's unfair competition claim under 15 U.S.C. § 1125(a) (Count II) is duplicative of plaintiff's claim for trademark infringement under 15 U.S.C. § 1114 (Count I).  As defendant rightly notes, "there is no specific federal cause of action for unfair competition." Sussman-Automatic Corp. v. Spa World Corp., 15 F. Supp. 3d 258,

272 (E.D.N.Y. 2014); Pot Luck, LLC v. Freeman, 2009 WL 693611 (S.D.N.Y. Mar. 10, 2009) (same); Mot at 9.    Instead, Section 1125(a) prohibits two types of conduct: (1) false designation of origin, and (2) false advertising.    Camelot SI, LLC v. ThreeSixty Brands Grp. LLC, 632 F. Supp. 3d 471, 481-482 (S.D.N.Y. 2022); Sussman-Automatic, 15 F. Supp. 3d at 272.    When claims for unfair competition and trademark infringement are effectively one and the same, "they need not be addressed as separate causes of action." Tactica Int'l, Inc. v. Atl. Horizon Int'l, Inc., 154 F. Supp. 2d 586, 597 n.14 (S.D.N.Y. 2001).

Here, plaintiff does not sufficiently plead any false statement, misleading advertisement, nor any facts suggesting a misrepresentation of origin beyond what is alleged in connection with its infringement claim.    Notably, plaintiff in its opposition does not even attempt to argue that its unfair competition claim under 15 U.S.C. § 1125(a) can survive as an independent and standalone federal cause of action.    Accordingly, the Court will treat Counts I and II as duplicative for purposes of this motion to dismiss, and Count II will rise and fall with Count I.    Tactica, 154 F. Supp. 2d at 597 n.14 ("Because [plaintiff's] claims of unfair competition and trademark infringement . . . are one in the same, they need not be addressed as separate causes of action").

### B. Counts I and III

Counts I and III of plaintiff's complaint both allege trademark infringement under the Lanham Act and New York common law. To state a claim for trademark infringement under both federal law and New York common law, a plaintiff must plausibly allege that (1) the plaintiff's mark is entitled to protection and (2) the defendant's use of an allegedly infringing mark is likely to cause consumer confusion as to the origin or sponsorship of the defendant's goods. See Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 114 (2d Cir. 2009) ("To prevail on a trademark infringement and unfair competition claim under 15 U.S.C. §§ 1114(1), 1125(a), in addition to demonstrating that the plaintiff's mark is protected, the plaintiff must prove that the defendant's use of the allegedly infringing mark would likely cause confusion as to the origin or sponsorship of the defendant's goods with plaintiff's goods"); Victorinox AG v. B & F Sys. Inc., 114 F. Supp. 3d 132, 141 (S.D.N.Y. 2015) ("In order to prove a claim for trademark infringement under New York common law, plaintiff must show that its mark is valid and legally protectible and that another's use of a similar mark is likely to create confusion as to the origin of the product") (internal quotation marks omitted)). The Court assumes that plaintiff has satisfied the first of these prongs.

"The crucial issue in an action for trademark infringement . . . is whether there is any likelihood that an <u>appreciable number of ordinarily prudent purchasers</u> are likely to be . . . confused[] as to the source [or sponsorship] of the goods in question." <u>Savin Corp. v. Savin Grp.</u>, 391 F.3d 439, 456 (2d Cir. 2004) (first and second alterations in original) (emphasis added) (internal quotation marks omitted).  Consideration of this question frequently requires "a fact-intensive analysis that . . . does not lend itself to a motion to dismiss." <u>The Name LLC v. Arias</u>, 2010 WL 4642456, at *5 (S.D.N.Y. Nov. 16, 2010) (internal quotation marks omitted).  However, where "simply looking at the [marks themselves], and the context in which [they appear], demonstrates how implausible it is that" an appreciable number of ordinarily prudent purchasers would be confused as to source or sponsorship, a "court[] [may] dispose[] of [a] trademark [infringement] claim[]" on a motion to dismiss.  <u>Roberts v. Bliss</u>, 229 F. Supp. 3d 240, 251 (S.D.N.Y. 2017) (citing <u>Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.</u>, 868 F. Supp. 2d 172, 183 (S.D.N.Y. 2012)); <u>see, e.g.</u>, <u>Gottlieb Dev. LLC v. Paramount Pictures Corp.</u>, 590 F. Supp. 2d 625, 635 (S.D.N.Y. 2008) (dismissing a trademark infringement claim because it was "simply not plausible" that the defendant's use of a mark "would confuse ordinarily prudent consumers as to [] sponsorship or affiliation"); <u>c.f.</u> <u>Eliya, Inc.</u>

v. Steven Madden, Ltd., 749 F. App'x 43, 47-48 (2d Cir. 2018) (affirming dismissal of a trademark claim where "the FAC fail[ed] to plausibly allege a likelihood of confusion" because "[t]he allegations that speak to this requirement . . . are entirely conclusory").

Further, "[t]rademark law is not concerned with mere theoretical possibilities of confusion . . . but with the practicalities of the commercial world." OffWhite Prods., LLC v. Off-White LLC, 480 F. Supp. 3d 558, 564-65 (S.D.N.Y. 2020) (internal quotation marks omitted).

As to any claims arising from defendant's marks in Classes 35 and 41, the SAC fails to plead a claim on which relief can be granted, because plaintiff is estopped from relitigating the issue of likelihood of confusion. Thus, in light of the TTAB's finding that the marks in Classes 35 and 41 are unlikely to cause confusion, those claims must necessarily fail.

The SAC further fails to meet the standard for a successful trademark infringement claim as to any claims arising out of the mark in Class 42 or any other rights that plaintiff may have. Put simply, even a cursory review of the parties' marks demonstrates the sheer implausibility that any confusion is likely. While it is true that both parties' marks use the word "mosaic," or a misspelling thereof, that is where the similarities end.

One need look no further than the parties' websites to see the implausibility of any confusion.  The home page of plaintiff's website offers visitors the opportunity to "[j]oin creators and businesses in a community for those who definitely earned it" as part of what appears to be a social media platform.  Home, MOSAEC (last visited Mar. 1, 2026), mosaec.com.  It also provides links to news articles hosted on third-party websites, and "featured listings" highlighting hotels and tourist attractions in several cities around the world.  Id.  Further, the store on plaintiff's website includes the option to purchase various items of MOSAEC branded apparel, which describe MOSAEC as "a hip, eclectic cultural mélange," and several "MOSAEC Handcrafted Books," including copies of The Great Gatsby and The Souls of Black Folk.  Store, MOSAEC (last visited Mar. 1, 2026), store.mosaec.com.

The "About" page of plaintiff's website further describes that plaintiff's business "includes a variety of goods and services across the arts, entertainment, education, apparel, printed goods, and technology sectors[,]" and explains that "MOSAEC is also a destination for those seeking fresh, irreverent and witty perspectives on things artful, entertaining, and cultural.  In addition to reviews and feature articles, the site includes streaming media tidbits from personalities discussing their work and users interacting with each other via our social media

-25-

platform."    About, MOSAEC (last visited Mar. 1, 2026), mosaec.com/about/.  Finally, the "Jobs" section of plaintiff's website also includes links to job postings, both in the United States and abroad, ranging from "Senior Apparel and Accessories Designer," to several listings for "Pediatric Dentist" positions across the U.S.  Jobs, MOSAEC (last visited Mar. 1, 2026), jobs.mosaec.com.

Defendant's website, on the other hand, specifies that its products are "built for labor organizations" and provides information on "why unions turn to Mosaic learning." Home, Mosaic Learning (last visited Mar. 1, 2026), mosaiclearning.com. Defendant offers no branded apparel or consumer goods such as copies of books, nor does it provide access to third-party news sources.  Further, defendant's website offers no social networking component nor job postings.  Indeed, defendant's website describes its services as "fus[ing] technology and ingenuity to bridge all barriers, connecting people and unleashing individual and organizational potential."  About, Mosaic Learning (last visited Mar. 1, 2026), mosaiclearning.com/about/.

Also notable is the fact that the SAC is devoid of any allegations of actual confusion.  As defendant rightly points out, the SAC "alleges no mistaken purchases.  No misdirected customer inquiries.  No instance of actual or even potential confusion—

because there are none.  The lone factual allegation it offers gestures at a fact but never actually touches one: Mosaic Learning supposedly used its mark in Washington D.C. for educational activities, while Plaintiff—at some unspecified time—did something undefined in the same city."  MTD at 7–8 (citing SAC ¶ 26).  Nor does plaintiff argue that any actual confusion has occurred in its opposition to defendant's motion to dismiss.

The SAC points to Mosaic Learning's work with the U.S. Army and suggests that plaintiff might someday seek a contract with the Department of Defense, as the Department of Defense is part "of Plaintiff's target market[.]"  SAC ¶ 32.  However, as noted above, "[t]rademark law is not concerned with mere theoretical possibilities of confusion[.]"  OffWhite, 480 F. Supp. 3d at 564–65.  The potential for plaintiff to one day seek a government contract is no more than a theoretical possibility of confusion, insufficient here to plead a claim for trademark infringement.

In this case, plaintiff has not plausibly alleged that there is any possibility of confusion, let alone that confusion is likely.  At base, it appears that plaintiff's claims come down to the simple allegation that the word "mosaic" (albeit spelled differently), a word quite common to the English language, appears in both marks.  It is clear to this Court that there no "likelihood that an appreciable number of ordinarily prudent purchasers are

-27-

likely to be . . . confused[] as to the source [or sponsorship]" of the parties' goods and services.  Savin Corp v. Savin Grp., 391 F.3d 439, 456 (2d Cir. 2004) (emphasis added).  Thus, under plaintiff's allegations, Counts I and III of the Second Amended Complaint must be dismissed.  Further, and as noted above, because Count II is duplicative of Count I, see supra. pp. 20-21, Count II must also be dismissed.

### C. Count IV

Plaintiff's remaining claim alleges unfair competition under New York common law.  "To prevail on a claim of unfair competition under New York law, a plaintiff must show (1) likelihood of confusion and (2) bad faith by the defendant."  Blockchange Ventures I GP, LLC v. Blockchange, Inc., 2021 WL 4340648, at *5 (S.D.N.Y. Sep. 22, 2021); Forschner Grp., Inc. v. Arrow Trading Co., 124 F.3d 402, 408 (2d Cir. 1997) ("Under New York common law, the essence of unfair competition is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods) (internal quotations omitted) (emphasis added)); see also Burberry Ltd. And Burberry USA v. Designer Imports, Inc., 2010 WL 199906, at *8 (S.D.N.Y. 2010) ("A claim under the Lanham Act, coupled with a showing of bad faith or intent establishes a claim for unfair competition" under New York common law).

Regarding the first element, as discussed above, the SAC is devoid of a plausible showing that there is an actual or likely confusion among consumers.  That alone is sufficient reason to dismiss Count IV under New York law.

Nonetheless, plaintiff also fails to plausibly allege that defendant acted in bad faith.  There is no plausible allegation in plaintiff's complaint suggesting that defendant was aware that plaintiff or plaintiff's mark existed when defendant adopted its own mark, nor that defendant intended to exploit or capitalize on plaintiff's mark.  Plaintiff has not alleged any knowledge, motive, or intent that could plausibly lead this court to conclude that defendant acted in bad faith.  Once again, plaintiff in its opposition makes no effort to argue that defendant acted in bad faith.  Accordingly, the Court finds that plaintiff has not plausibly alleged bad faith on behalf of defendant and Count IV is dismissed.

### D. Plaintiff's Claims Are Dismissed with Prejudice

Having determined that each of plaintiff's claims fail as a matter of law, we turn now to defendant's argument that plaintiff's claims should be dismissed with prejudice.  When granting plaintiff leave to file a Second Amended Complaint, the Court was clear that it was granting leave to amend the complaint "for the final time[.]"  ECF No. 43 at 2.  Despite that warning, and as detailed

above, plaintiff failed to remedy the defects in its complaint. It is true that "leave to amend a complaint should be freely given when justice so requires."  Coalition for a Level Playing Field, L.L.C. v. AutoZone, Inc., 813 F. Supp. 2d 557, 565 (S.D.N.Y. 2011); Mendoza v. Cornell Univ., 2021 U.S. Dist. LEXIS 44937, at *11 (S.D.N.Y. 2021) (same).  However, it is also well settled that "[l]eave to amend may properly be denied if the amendment would be futile,"  Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012), and a party's "repeated failure to cure deficiencies by amendments previously allowed," may be considered in denying leave to amend, Foman v. Davis, 371 U.S. 178, 182 (1962).

Here, the interests of justice would not be served by allowing plaintiff to submit a fourth complaint.  Plaintiff has already amended its complaint twice and each time failed to remedy the deficiencies in its claims.  Notably, in its opposition, plaintiff does not make any suggestion as to what allegations could be added to a further amended complaint or how the complaint would otherwise be amended to cure its deficiencies, relying instead on discussion of its past amendments and the "liberal standard" for allowing amendments.  MTD Opp. at 11-13.  The Court unquestionably finds that any further amendment would be futile and, as such, denies

plaintiff leave to file any further amended complaint. Accordingly, plaintiff's claims are each dismissed with prejudice.

### E. Plaintiff Is Not Entitled to the Relief it Seeks

Finally, we note that defendant argues, as an additional ground for dismissal, that plaintiff has failed to plead that it is entitled to the remedies requested in its prayer for relief. See Mot. at 14-15; SAC at pp. 18-20.  Given the Court's conclusions above that all of plaintiff's claims are dismissed with prejudice, there is no need for the Court to consider the issue of entitlement to relief at this time.

## III. Motion for Sanctions

Having determined that each of plaintiff's claims is hereby dismissed with prejudice, we turn now to consideration of defendant's motion for sanctions.  Defendant argues that sanctions are appropriate under both Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927.  The Court will consider both standards in turn.

### a. Legal Standard

Rule 11 requires that by signing a complaint or filing, "an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, . . . ;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]"

Fed. R. Civ. P. 11(b). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "[D]istrict courts . . . have wide discretion in deciding when sanctions are appropriate," even if Rule 11(b) has been violated. Morley v. Ciba-Geigy Corp., 66 F.3d 21, 24 (2d Cir. 1995); see Perez v. Posse Comitatus, 373 F.3d 321, 326 (2d Cir. 2004) (sanctions determinations are reviewable "only for abuse of discretion").

"The standard for triggering the award of fees under Rule 11 is objective unreasonableness[.]" Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000). A filing meets this standard "when it is patently clear that a claim has absolutely no chance of success." Oliveri v. Thompson, 803 F.2d 1265, 1275 (2d Cir. 1986) (internal quotation

marks omitted).  The standard is "quite rigorous and very rarely succeeds in cases where evidence of bad faith or aggravated misconduct is not apparent."  Indoafric Exports Priv. Co. v. Citibank, N.A., 2016 WL 6820726, at *4 (S.D.N.Y. Nov. 7, 2016), aff'd, 696 Fed. App'x 551 (2d Cir. 2017); see also Fleming v. Hymes-Esposito, 2013 WL 1285431, at *11 (S.D.N.Y. Mar. 29, 2013) ("Rule 11 sanctions are an extreme measure.").

Under Rule 11(b)(2), "[t]he fact that a legal theory is a long-shot does not necessarily mean it is sanctionable." Fishoff v. Coty Inc., 634 F.3d 647, 654 (2d Cir. 2011).  "Rule 11 motions for sanctions should not be employed . . . to test the legal sufficiency or efficacy of allegations in the pleadings" because "other motions are available for those purposes[,]" such as "a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." Luv N' Care, Ltd. v. Shiboleth LLP, 2017 WL 3671039, at *14 (S.D.N.Y. Aug. 8, 2017) (first alteration in original) (quoting On Time Aviation, Inc. v. Bombardier Capital Inc., 570 F. Supp. 2d 328, 331 (D. Conn. 2008)).

Similarly, under Rule 11(b)(3), only the most egregious violations warrant the imposition of sanctions.  "[T]he 1993 Amendments to Rule 11 relaxed the necessary basis on which a party's claim rests from the more rigorous 'well-grounded in fact,' to a standard of 'to the best of the person's knowledge,

information, and belief, formed after an inquiry reasonable under the circumstances . . . .'" E. Gluck Corp. v. Rothenhaus, 252 F.R.D. 175, 179 (S.D.N.Y. 2008) (quoting In re Pennie & Edmonds, 323 F.3d 86, 88-89 (2d Cir. 2003) (alteration in original)). Under the current standard, "sanctions may not be obtained unless a particular allegation is utterly lacking in support," Baram v. Doe, 2024 WL 232319, at *6 (S.D.N.Y. Jan. 22, 2024), appeal dismissed (June 12, 2024) (quoting In re Highgate Equities, Ltd., 279 F.3d 148, 154 (2d Cir. 2002)), such that there is a "'direct falsehood' in a party's papers," id. (quoting Sichel v. Unum Provident Corp., 230 F. Supp. 2d 325, 332 (S.D.N.Y. 2002)). In close cases, the Second Circuit has "instructed district courts to resolve all doubts in favor of the signer" of the pleading. Associated Indem. Corp. v. Fairchild Indus., Inc., 961 F.2d 32, 34-35 (2d Cir. 1992).

Defendant also brings its motion pursuant to 28 U.S.C. § 1927, which states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

To obtain sanctions pursuant to Section 1927, a movant must make a "clear showing of bad faith" on the part of respondent. Oliveri,

803 F.2d at 1273.  Sanctions under this standard are more difficult to prove because "Rule 11 requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers, but § 1927 requires more: subjective bad faith by counsel." Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 96 (2d Cir. 1997) (emphasis in original).

### a. **Discussion**

#### 1. **Rule 11**

Defendant raises three main arguments in support of its motion for sanctions under Rule 11.  First, defendant argues that sanctions are warranted because plaintiff's claims are barred by collateral estoppel.  Sanctions Mot. at 6-7.  Second, defendant argues that sanctions are warranted because plaintiff's claims are factually and legally baseless.  Id. at 7-10.  Third, defendant contends that sanctions are necessary to deter plaintiff's pattern of abuse.  Id. at 10-11.  None of these arguments rise to the level of warranting sanctions under Rule 11.

As discussed at length above, the Court agrees with defendant that plaintiff is collaterally estopped from rearguing the issue of likelihood of confusion for its claims relating to defendant's mark in Classes 35 and 41.  Supra pp. 11-20.  However, the mere fact that some of plaintiff's claims are collaterally estopped by a TTAB Decision does not mandate that plaintiff's actions warrant

sanctions.  Further, defendant acknowledges in both its motion to dismiss and its motion for sanctions that the TTAB proceeding does not have preclusive effect as to plaintiff's claims relating to the Class 42 mark.  See Sanctions Mot. at 3 (noting that plaintiff's claims are only precluded in "Classes 35 and 41"); MTD at 11 n.9 ("The TTAB's . . . conclusion for the Class 42 services . . . has no preclusive effect").  It would be a stretch for this Court to conclude that plaintiff's pleading was "objectively unreasonable" on the basis that it was collaterally estopped where, as here, even defendant acknowledges that not all of plaintiff's claims are collaterally estopped.

Defendant is also correct that plaintiff has previously litigated a similar infringement action in the Northern District of Illinois, in which the court rejected plaintiff's claims on collateral estoppel grounds.  RLP Ventures, LLC v. All Hands Instruction NFP, 2020 WL 1330376, at *4 (N.D. Ill. Mar. 23, 2020).  That case, however, is of limited value in establishing a Rule 11 violation here.

While that litigation may have put plaintiff on notice that litigation in front of the TTAB can serve as a bar to re-litigation in federal courts, it did not specifically alert plaintiff of the fact that the claims at issue in this case would similarly be barred.  It must be recalled that the Supreme Court, while

-36-

concluding that TTAB proceedings can serve as a basis for issue preclusion, has observed that a finding by the TTAB will not always suffice to preclude litigation of similar issues.  B&B Hardware, 135 S. Ct. at 1307 (the TTAB's "determination that a likelihood of confusion does or does not exist will not resolve the confusion issue with respect to non-disclosed usages.") (internal quotation marks omitted).  Thus, it is not objectively unreasonable for plaintiff to argue that the TTAB Decision had no preclusive effect even if, as is the case here, plaintiff is wrong.  Further, the All Hands case did not involve defendant's marks.  A dismissal in one case, involving a different defendant and a different mark, is insufficient to show that plaintiff's actions here warrant sanctions.

Defendant's second argument, that Rule 11 sanctions are warranted because plaintiff's claims are factually and legally baseless, is similarly insufficient as this argument amounts to little more than a rehashing of the arguments presented in defendant's motion to dismiss.  As evidenced by the discussion of defendant's motion to dismiss above, the Court agrees with defendant that plaintiff failed to state a claim.  However, the dismissal of plaintiff's claims is in and of itself an insufficient basis to warrant sanctions.  Tantaros v. Fox News Network LLC, 2018 WL 1662779, at *4 (S.D.N.Y. Mar. 16, 2018) ("That Plaintiff's

complaint may have been subject to dismissal under Rule 12 does not mean that sanctions are warranted or necessary"); Fishoff, 634 F.3d at 654 ("The fact that a legal theory is a long-shot does not necessarily mean it is sanctionable").

Finally, defendant argues that sanctions are necessary to deter plaintiff's "pattern of abuse." Sanctions Mot. at 10-11. Put simply, the Court cannot conclude on this record that plaintiff has engaged in a pattern of abuse of the judicial system. It is true that plaintiff has amended its complaint twice in this litigation. However, amending a complaint with leave of court, as here, is not an inherently sanctionable act. The Court acknowledges that plaintiff had a claim dismissed on collateral estoppel grounds in the Northern District of Illinois. Nonetheless, filing two trademark infringement actions in federal court challenging TTAB rulings is not enough to show a pattern of abuse deserving of sanctions under Rule 11.

In sum, the Court concludes that while plaintiff's claims are meritless, the Court does not find that plaintiff's actions and filings in this litigation have risen to an "objectively unreasonable" level sufficient to warrant Rule 11 sanctions.

### 2. 28 U.S.C. § 1927

Turning to defendant's request for sanctions under 28 U.S.C. § 1927, the Court similarly finds that defendant has not made a

sufficient showing to warrant sanctions here.  Defendant is again correct that plaintiff's claims lack merit.  However, for the reasons discussed above and in light of the Court's denial of defendant's motion for sanctions under Rule 11, the Court cannot find that the higher "subjective bad faith" standard of Section 1927 has been met.  The fact that plaintiff's claims fail as a matter of law does not itself warrant sanctions.  Accordingly, defendant's motion for sanctions is denied.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted in full and defendant's motion for sanctions is denied. The Clerk of Court is respectfully directed to terminate the motions pending at ECF Nos. 59 and 61 and close the case.

Dated:    March 3, 2026
          New York, New York

_____
          NAOMI REICE BUCHWALD
     UNITED STATES DISTRICT JUDGE